

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 13, 1996

The Honorable James M. Kuboviak
Brazos County Attorney
Brazos County Courthouse
Bryan, Texas 77803

Opinion No. DM-398

Re: Whether a tax assessor-collector may, without approval of the commissioners court of his county, expend funds accrued as interest under section 23.122, Tax Code (RQ-813)

Dear Mr. Kuboviak:

You ask certain questions concerning interest on the dealer's motor vehicle inventory escrow account maintained by the tax assessor-collector pursuant to section 23.122 of the Tax Code, as amended by the Seventy-fourth Legislature. Act of May 18, 1995, 74th Leg., R.S., ch. 945, 1995 Tex. Sess. Law Serv. 4727, 4730-33. This statute requires the assessor-collector to maintain such an account in the county depository for the prepayment of certain property taxes on motor vehicle inventory. Subsection (c), as amended effective as of January 1, 1996, now reads as follows:

> The collector shall maintain the escrow account for each owner in the county depository. The collector is not required to maintain a separate account in the depository for each escrow account created as provided by this section but shall maintain separate records for each owner. *The collector shall retain any interest generated by the escrow account to defray the cost of administration of the prepayment procedure established by this section. Interest generated by an escrow account created as provided by this section is the sole property of the collector, and that interest may be used by no entity other than the collector. Interest generated by an escrow account may not be used to reduce or otherwise affect the annual appropriation to the collector that would otherwise be made.*

Tax Code § 23.122(c) (emphasis added).

You ask two questions about the interest created by this escrow account and how it is to be administered. First, you ask whether the assessor-collector is "allowed to set up a special account for these funds and spend them without the approval of the commissioners court." In our view, these funds are analogous to the "hot-check fund" administered by the district attorney pursuant to article 102.007 of the Code of Criminal Procedure. The administration of that fund, as we have reiterated in a series of opinions of which the most recent is Attorney General Opinion DM-357 (1995), is "wholly outside

of the county budgeting process." Accordingly, we answer your first question in the affirmative.

Ordinarily, as we pointed out in Attorney General Opinion DM-357, expenditure of county funds is under the control of the commissioners court. Attorney General Opinion DM-357 (1995) at 3. However, the hot-check fund has been removed from the control of the commissioners court by article 102.007(f) of the Code of Criminal Procedure, which provides as follows:

> Fees collected under Subsection (c) of this article shall be deposited in the county treasury in a special fund to be administered by the county attorney . . . . Expenditures from this fund *shall be at the sole discretion of the attorney* and may be used only to defray the salaries and expenses of the prosecutor's office, but in no event may the county attorney . . . supplement his or her own salary from this fund.

We believe it was the intent of the legislature, in denominating interest generated by the inventory escrow account as the "sole property" of the collector to indicate that such funds, like the hot-check fund, were not subject to the control of the commissioners court. Further, the collector has the authority to separate these funds in a special account. Indeed, given the insistence of the statute that the collector "retain" the funds, and that they "may be used by no entity other than the collector," such separation is necessary for the statutory scheme to be effective. *See* Letter Opinion 92-7 (1992) at 2 (separate account required to avoid commingling of funds so that statute will be complied with).

The statute speaks of the fund derived from the interest on the inventory escrow account as "the sole property of the collector." We must ask what this means. It plainly cannot mean that the collector may retain the funds for his personal use and benefit, both because the collector is directed to retain the interest "to defray the cost of administration" of this prepayment procedure and because any such purported grant of these public funds to a private individual would be impermissible under article III, section 51 of the Texas Constitution. *Black's Law Dictionary* defines property, *inter alia*, as "[t]he exclusive right of possessing, enjoying, and disposing of a thing." BLACK'S LAW DICTIONARY 1095 (5th ed. 1979). In this case, the collector has no such exclusive right of enjoyment. However, the collector does have an exclusive, but not unconditional right to the disposal of the fund.

It has been suggested that the fund in question here is less like the hot-check fund and more akin to the records management fee established by section 108.011(b) of the Local Government Code, which is discussed in Letter Opinion No. 92-7 or the fee relating to motor vehicle registration mandated by section 4.202(a) of the County Road and Bridge Act, article 6702.1, V.T.C.S., which is discussed in Attorney General Opinion DM-199 (1993) at 1. However, in neither of those statutes, both of which unlike section 23.122 describe the fees involved as fees of office, is the fund described as the "sole

property" of the officer; nor in either of those statutes is the officer directed to "retain" the fees involved.

We are further persuaded that it was not the intent of the legislature that this interest should be placed within the general county fund when we compare subsection 23.122(c) with subsection 23.122(p), enacted by the Seventy-fourth Legislature. Act of May 18, 1995, 74th Leg., R.S., 1995, ch. 945, 1995 Tex. Sess. Law Serv. 4727, 4731-33, 4733. Subsection 23.122(p), which contemplates that fines and penalties for failure to file a required inventory tax statement will be assessed against motor vehicle dealers, reads as follows:

> *Fines* collected pursuant to the authority of this section shall be deposited in the county depository *to the credit of the general fund.* *Penalties* collected pursuant to the authority of this section are the *sole property of the collector*, may be used by no entity other than the collector, and may not be used to reduce or otherwise affect the annual appropriation to the collector that would otherwise be made. [Emphasis added.]

The "penalties" are treated precisely as the interest is in subsection (c), and they are distinguished from "fines" which are explicitly made part of the general fund of the county. Reading the two subsections *in pari materia* makes clear the legislative intent that these funds are not to be treated as general county revenue, but are rather a specially dedicated fund, the "sole property" of the collector, and like the hot-check fund are "wholly outside of the county budgeting process." Attorney General Opinion DM-357 (1995) at 6. As further evidence of this, we note the insistence in both sections that these funds "may not be used to reduce or otherwise affect" general appropriations to the assessor. Tax Code § 23.122 (p).

We conclude, therefore, in response to your first question that the assessor-collector may set up a special account for the funds generated by the interest on the motor vehicle inventory escrow account, and that he may dispose of such funds without the approval of the commissioners court.

Your second question is whether the costs of administration for which the interest is dedicated may include costs and expenses already provided for in the county budget and paid for out of the general fund. We find nothing in the statute that requires that these costs be not otherwise provided for, although obviously if particular costs have already been defrayed the money will not be used to that end. More importantly, nothing in the statute supports a construction which would permit the county to recapture general expenditures from this fund. Indeed, the last two sentences of subsection (c), which note that the interest "may be used by no other entity" and "may not be used to reduce or otherwise affect the annual appropriation to the collector" expressly forbid such recapture.

What constitutes a legitimate cost of administration of the prepayment program is a matter of fact upon which this office cannot opine. We do note, however, that the

requirement that the interest be used "to defray the cost of administration of the prepayment procedure" is more restrictive than the corresponding language in the hot-check fund statute, article 102.007(f) of the Code of Criminal Procedure, which permits that fund to be used "to defray the salaries and expenses of the prosecutor's office." In this respect, the interest at issue here is more akin to the records management fee established by section 118.011(b) of the Local Government Code, and these funds may not be used for general office expenses of the assessor-collector which are unrelated to the costs of the prepayment program.

Moreover, the same restrictions which apply to hot-check funds as public moneys also apply to the funds at issue here. Accordingly, these funds are subject to audit by the county auditor. *Cf.* Attorney General Opinion DM-357 at 8 (1995) (hot-check fund subject, as part of county attorney's accounts, to examination at least yearly). More generally, these funds, like the hot-check fund, must be "administer[ed] . . . within the confines of laws applicable to the use of county funds." Attorney General Opinion JM-313 (1985); *see also* Attorney General Opinion JM-967 (1988); Attorney General DM-357 (1995). With these restrictions in mind, however, the funds generated by the interest on the dealer's motor vehicle inventory escrow account are not subject to the control of the commissioners court.

## S U M M A R Y

The interest generated by the dealer's motor vehicle escrow account held by the tax assessor-collector pursuant to section 23.122 of the Tax Code constitutes a fund which is to be used at the discretion of the collector to defray the cost of administration of the statutory prepayment procedure. The funds may be kept in a special account, and the collector does not need the approval of the commissioners court for their disbursement.

Such funds may, however, only be used to defray the cost of administration of the prepayment procedure. They may not be used for general office expenses of the assessor-collector which are unrelated to the cost of administering the program.

Yours very truly,

DAN MORALES
Attorney General of Texas

p. 2189

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by James E. Tourtelott
Assistant Attorney General